PEOPLE v GUNN
PEOPLE v WALKER
PEOPLE v COLE

1. CRIMINAL LAW—EVIDENCE—ILLEGAL SEIZURE—ADMISSIBILITY.

The "fruit of the poisonous tree" doctrine proscribes the introduction at a criminal trial of any evidence indirectly obtained through illegal means.

2. CRIMINAL LAW—EVIDENCE—ILLEGAL SEIZURE—ADMISSIBILITY.

There must have been some illegal activity employed in gathering the evidence sought to be excluded in order for a defendant to invoke the "fruit of the poisonous tree" doctrine to exclude the evidence from trial.

3. ARREST—WITHOUT WARRANT—REASONABLENESS—FELONY.

A police officer may arrest a person without a warrant when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it (MCLA 764.15[d]).

4. ARREST—PROBABLE CAUSE.

Probable or reasonable cause for arrest is not a mere suspicion but rather stems from facts available to the officer at the time of the arrest which would create an honest belief in the mind of a reasonably prudent man that an offense has been committed and that the person arrested committed it.

5. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

The police had reasonable cause to arrest a woman without a warrant where at the time of her arrest at her home the police knew that a young woman known as "Precious" lived in the home; that the victim of the murder they were investigating had died of a shotgun wound to the head and was bound by telephone cord, and that his apartment had been robbed; that

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence §§ 415, 531.
[3] 5 Am Jur 2d, Arrest § 25.
[4] 5 Am Jur 2d, Arrest § 45.
[5] 5 Am Jur 2d, Arrest §§ 24, 32.

the assailants had escaped in a black and white convertible; that one week earlier the deceased had been bound with telephone cord and his apartment had been robbed by two armed males and a young woman known as "Precious"; and that on several occasions a black and white convertible had been seen parked in the driveway of the home where the arrest was made.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 January 3, 1973, at Detroit. (Docket No. 14030.) Decided August 27, 1973.

Melvin Gunn, Robert L. Walker, and Robert Cole were convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia P. Boyle,* Assistant Prosecuting Attorney, for the people.

*Justin C. Ravitz (Theodore F. Spearman, Jr.,* of counsel), for defendants on appeal.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and ADAMS,* JJ.

T. M. BURNS, J. The trial court sitting without a jury tried and convicted the defendants of first-degree murder[1] and sentenced them to life imprisonment. Defendants moved for a new trial alleging certain prosecution witnesses were subjected to illegal arrests and an illegal search thus rendering their in-court testimony inadmissible as being

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.316; MSA 28.548.

"fruit of the poisonous tree". The trial court denied the motion, and we affirmed defendants' convictions at 34 Mich App 106; 190 NW2d 793 (1971). However, the Michigan Supreme Court remanded the case back to the trial court "for taking of such proofs as defendants seeks *[sic]* to offer in support of motions for new trial * * * ". 385 Mich 776–777; 188 NW2d 896 (1971). After the requisite hearing on remand, the lower court concluded that the arrests and searches complained of were not constitutionally repugnant and once again denied the motions for new trial. Defendants appeal.

At approximately midnight on April 23, 1969, Workman Irby was shot and killed during a robbery of his apartment. On the morning after the crime was committed, the investigating officer assigned to the case had unearthed the following information: the victim was bound hand and foot with telephone cord and had died of a shotgun blast to the head, the apartment had been ransacked, and the suspects had escaped in a black and white convertible. However, the police did not know the license number of the vehicle, the number of persons involved or their descriptions. Subsequently the victim's employer told the police that on April 15, 1969, eight days prior to the crime in question the deceased stated that while alone in his apartment the night before he had been bound with telephone cord and robbed by two armed men and a woman known as "Precious". In addition a neighborhood grocer told the police that a woman named "Precious" lived in a house across the street from his store and that he had occasionally seen a black and white convertible parked in the driveway.

Armed with all of the foregoing information, the investigating officer along with other backup offi-

cers proceeded to the address where "Precious" allegedly resided. A young woman, later identified as Lillian Carlisle, answered the door. She was asked if she was known as "Precious". She responded in the negative to this query. At this point the police, without Miss Carlisle's consent, entered the house and observed a dresser drawer lying on the floor. The drawer answered the description of the one missing from the victim's apartment. Miss Carlisle and defendant Gunn, who was sitting in the living room of the dwelling at the time, were arrested and taken to police headquarters. Thereafter a systematic warrantless search of the house was conducted and in addition to the dresser drawer, the police discovered a sawed-off shotgun and the burned remains of a wallet and identification papers belonging to the deceased. None of this physical evidence, however, was introduced at defendants' trial. At the conclusion of the search, the police remained on the premises and within a space of three hours arrested Carl Holmes and Laurance Davis when they appeared at the house.

Lillian Carlisle, after being advised of her rights in accordance with *Miranda v Arizona,*[2] voluntarily gave a statement to the police which implicated defendants Gunn and Walker in the apartment robbery-murder. Carl Holmes also gave a statement incriminating defendant Cole. During the interrogation of the witnesses on the day of their arrests the name of an alleged eyewitness, Valerie Owens, was mentioned. Defendants assert that Lillian Carlisle gave the name to the police. It is not clear, however, from the record who gave Owens' name to the police. This is borne out by the following testimony of the investigating officer:

[2] 384 US 436, 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

"*Q. [by defense counsel]:* Witness, do you have an independent recollection or do you know how in your investigation of this case you got to Valerie Owens?"

"*A.* Somewhere along the line her name came up. That's right, I believe that she was there at this residence when they came back from the scene of the shooting. Somebody mentioned her name. But as to who, I don't remember."

In any event the police left word at the Owens' residence to have her contact them. She voluntarily reported to police headquarters the next day and was arrested. The following day after being informed of the requisite *Miranda* warnings and after contacting and conversing with an attorney, Miss Owens gave a formal statement which also implicated defendants Gunn and Walker in the crime. At trial Lillian Carlisle, Carl Holmes, Laurance Davis and Valerie Owens testified on behalf of the prosecution.

An examination of the trial transcript reveals that the testimony of witness Owens placed the defendants at the scene of the crime and clearly connected them with the death of Workman Irby. The testimony of other witnesses, while tending to corroborate the testimony of Miss Owens, did not implicate the defendants to the same extent. Indeed, had Miss Owens' testimony been excluded, the prosecution would in all probability have failed to produce legally sufficient evidence to sustain the defendants' convictions.

Both at trial and here on appeal defendants assert that the testimony of the four witnesses noted earlier were the products of the alleged illegal, warrantless arrest of Lillian Carlisle and the illegal, warrantless search of her residence, and that under the "fruit of the poisonous tree"

doctrine, it was error to receive this testimony at trial.[3]

The "fruit of the poisonous tree" doctrine proscribes the introduction at trial of any evidence indirectly obtained through illegal means. *Silverthorne Lumber Co v United States,* 251 US 385; 40 S Ct 182; 64 L Ed 319; 24 ALR 1426 (1920); McCormick, Evidence (2d ed), § 177, p 411. It follows, therefore, that in order to invoke the doctrine to exclude evidence from trial, there must have been some illegal activity employed in gathering the evidence sought to be excluded. Thus the instant appeal turns upon whether the police had reasonable cause to arrest Lillian Carlisle without a warrant.[4]

A police officer may arrest a person without a warrant when "he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it." MCLA 764.15(d); MSA 28.874(d). Probable or reasonable cause is not a mere suspicion but rather stems from facts available to the officer at the time of the arrest which would create an honest belief in the mind of a reasonably prudent man that an offense has been committed and that the person arrested committed it. *People v Griffin,* 33 Mich App 474; 190 NW2d 266 (1971); *People v Wenrich,* 31 Mich App 644; 188 NW2d 102 (1971).

At the time Lillian Carlisle was arrested the

[3] In order to reach the gravamen of this case, namely whether the testimony under attack was the forbidden fruit of the poisonous tree, we will assume for the purpose of this appeal that the defendants have standing to challenge the legality of the witnesses' arrest and the subsequent search and seizure. *But see Alderman v United States,* 394 US 165; 89 S Ct 961; 22 L Ed 2d 176 (1969).

[4] Since none of the physical evidence seized from witness Carlisle's residence was admitted into evidence at trial and inasmuch as defendants have failed to show that the witnesses' testimony resulted from the seizure of this physical evidence, we need not pass upon whether the search of witness Carlisle's residence was proper.

police knew the following facts: (1) Workman Irby had died of a gunshot wound to the head, he was bound by telephone cord, and his apartment had been robbed; (2) the assailants had escaped in a black and white convertible; (3) one week earlier Workman Irby had been bound with telephone cord and his apartment had been robbed by two armed males and a young woman known as "Precious"; (4) a young woman known as "Precious" lived in a house nearby (later ascertained to be the residence of Lillian Carlisle); and, (5) on several occasions a black and white convertible had been seen parked in the driveway of this house. It is our opinion that these facts amply justified the police in entertaining an honest belief that an offense had been committed and that one or more occupants of the Carlisle house had perpetrated the crime. Therefore the warrantless arrest of Lillian Carlisle was based upon probable cause and was not illegal.

Having concluded that the arrest of Lillian Carlisle was proper, the "fruit of the poisonous tree" doctrine, which presupposes an illegal act, will not operate to exclude any testimonial evidence or information which arose out of that arrest.

Accordingly, it was not error for the trial court to receive witness Owens' testimony and deny defendants' motion for a new trial which challenged the admissibility of that testimony.

Affirmed.

All concurred.