*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICARDO RODRIGUEZ, JR.,

Defendant-Appellant.

FOR PUBLICATION
April 18, 2019
9:00 a.m.

No. 338914
Oakland Circuit Court
LC No. 2016-259759-FC

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

MURRAY, C.J.

Defendant appeals as of right his jury trial convictions for possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), possession of marihuana, MCL 333.7403(2)(d), and unarmed robbery, MCL 750.530. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 2 to 15 years' imprisonment for the possession of less than 25 grams of cocaine conviction, 249 days, time served,[1] for the possession of marihuana conviction, and 8 to 20 years' imprisonment for the unarmed robbery conviction. We affirm defendant's convictions, vacate his sentence for unarmed robbery, and remand for resentencing.

This case arises out of the unarmed robbery of Adrian Valentin. Valentin was inside Arnolfo Rojas's truck that was parked in front of Rojas's apartment. Codefendant Tonya Tique-Diaz approached the truck and attempted to break the truck's windows with a tire iron. After she was unsuccessful, defendant took the tire iron from Tique-Diaz and broke three of the truck's windows. Defendant then demanded that Valentin give him everything he had, or else defendant would take out his knife and stab Valentin. Valentin threw defendant $200 and his bracelet before defendant left.

---

[1] The judgment of sentence lists defendant's sentence for possession of marihuana as 365 days. However, at sentencing, the trial court sentenced defendant to 249 days, time served. We attribute the 365 day sentence in the judgment of sentence to a clerical error.

Defendant's appeal challenges his sentences, as well as to the trial court's conclusion that he provided police consent to search the home. We now turn to those challenges.

## I. OFFENSE VARIABLES

With respect to sentencing, defendant argues that the trial court erred because offense variables (OVs) 2, 7, 9, and 12 should all be assessed zero points. We agree with respect to OVs 7 and 12, but conclude that no errors were made with respect to OVs 2 and 9.

We first recognize the always important standards of review. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).

### A. OV 2

Defendant argues that OV 2 should be assessed zero points, instead of one point, because MCL 777.32 requires that a defendant possess or use a potentially lethal weapon, and here, there is no evidence that defendant possessed or used a knife. Defendant is correct that there was no evidence he used or possessed a knife. But there was evidence he possessed and used a tire iron during the robbery, and that clearly suffices for the scoring of one point under OV 2.

"MCL 777.32 scores the 'lethal potential of the weapon possessed or used.' " *People v Hutcheson*, 308 Mich App 10, 16; 865 NW2d 44 (2014), quoting MCL 777.32(1). "If [t]he offender possessed or used any other potentially lethal weapon, besides a harmful biological substance or device, a harmful chemical substance or device, an incendiary or explosive device, a fully automatic weapon, a firearm, or a cutting or stabbing weapon, one point should be assessed." *Hutcheson*, 308 Mich App at 16. (quotation marks and citations omitted; alteration in original). "If '[t]he offender possessed or used no weapon,' zero points should be assessed." *Id*. at 17, quoting MCL 777.32(1)(f) (alteration in original). This Court has said before that a tire iron is a potentially lethal weapon, *People v Rollins*, 33 Mich App 1, 10; 189 NW2d 716 (1971), so the trial court did not err by assessing one point under OV 2 based on defendant's use of a tire iron during the robbery.

### B. OV 7

We next turn to defendant's argument that the trial court erred in assessing 50 points under OV 7 because his conduct toward Valentin during the robbery did not rise to the level of sadism, torture, excessive brutality, or similarly egregious conduct.

MCL 777.37(1)(a) provides that 50 points be assessed when " '[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.' " *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018). " 'OV 7 is designed to respond to particularly heinous instances in which the criminal acted to increase [a victim's] fear by a substantial or considerable amount.' " *Id*., quoting *People v Glenn*, 295 Mich App 529, 536; 814 NW2d 686 (2012), rev'd

on other grounds by *Hardy*, 494 Mich at 434 (alteration in original). Because of the language "during the offense" in MCL 777.37(1)(a), the focus of OV 7 is "solely on conduct occurring during the [sentencing] offense." *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016). "Regardless, even if OV 7 did not contain language that expressly limits the judge's consideration to conduct that occurred during the sentencing offense, OV 7 certainly does not specifically provide that a sentencing court may look outside the sentencing offense to past criminal conduct in scoring OV 7." *Id*.

Focusing solely on the conduct occurring during defendant's unarmed robbery of Valentin, we must determine whether Valentin "was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety [of Valentin] suffered during the offense." MCL 777.37(1)(a). Neither party asserts that "sadism," "torture," or "excessive brutality," are at issue, and the facts in no way suggest that they would be applicable.[2] As a result, we must determine only whether Valentin was treated with conduct "similarly egregious" to sadism, torture, or excessive brutality that is "designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).[3]

In making this determination, we must consider "whether the defendant engaged in conduct beyond the minimal required to commit the offense" as well as "whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. Here, defendant was convicted of unarmed robbery which requires proof beyond a reasonable doubt that defendant committed 1) a felonious taking of property from another, 2) by force or violence, assault, or putting in fear, while 3) being unarmed. *People v Johnson*, 206 Mich App 122, 125-126; 520 NW2d 672 (1994). There is no question that defendant engaged in conduct that goes beyond the minimum required to commit the offense by using a tire iron during the course of the robbery of Valentin. With that conclusion, we now turn to whether defendant's conduct was intended to make Valentin's fear or anxiety greater by a

---

[2] "Sadism" is statutorily defined to mean "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). Our Court in *Glenn*, 295 Mich App at 533, defined torture to mean "the act of inflicting excruciating pain, as punishment or revenge, as a means of getting a confession or information, or for sheer cruelty." (Quotation marks and citation omitted.) Likewise, the *Glenn* Court defined "excessive brutality" to mean "savagery or cruelty beyond even the 'usual' brutality of a crime." *Id*.

[3] We recognize that in *Rosa*, 322 Mich App at 743-744, our Court quoted the current version of MCL 777.37(1)(a), containing the mandatory "similarly egregious" conduct language, but then proceeded to cite *Hardy*, 494 Mich at 443, to the effect that " 'a defendant's conduct does not have to be similarly egregious to sadism, torture or excessive brutality for OV 7 to be scored at 50 points . . . .' " Of course, that statement from *Hardy* is now irrelevant because of the subsequent legislative amendment (made in response to *Hardy*) that added the "similarly egregious" language. See 2015 PA 137. That 2015 legislative amendment essentially put into place the *Glenn* Court's interpretation of OV 7.

considerable amount, *Hardy*, 494 Mich at 443-444, while keeping in mind the legislative command that this conduct must be similarly egregious to sadism, torture, or excessive brutality.

The closest decision addressing facts similar to those in the present case is *People v Hornsby*, 251 Mich App 462; 650 NW2d 700 (2002). In *Hornsby*, the trial court assessed 50 points for OV 7 because it found evidence of "terrorism," a term that was contained in a prior version of MCL 777.37(1)(a), and which was defined as "conduct designed to substantially increase the fear and anxiety a victim suffers during the offense." *Hornsby*, 251 Mich App at 468 (quotation marks and citation omitted).[4] The Court concluded that the trial court's decision was not an abuse of discretion because during the armed robbery defendant "did more than simply produce a weapon and demand money," as defendant cocked the weapon and repeatedly threatened the employees during the course of the robbery. *Id*. at 469. In most other decisions addressing OV 7, the facts underlying the crime, whether falling under the definitions of sadism, torture, or excessive brutality, involved circumstances whereupon the defendant acted with or engaged in extreme and horrific actions. See *People v Hunt*, 290 Mich App 317, 325-326; 810 NW2d 588 (2010), and cases cited therein. More recently, in *Rosa*, 322 Mich App at 744, we upheld the trial court's assessment of 50 points for OV 7 because defendant's strangulation and suffocation of, and threats to, the victim constituted excessive brutality.

Despite the somewhat significant factual similarities between this case and *Hornsby*, *Hornsby* was decided under a substantially different statutory provision. Although the statute in *Hornsby* and the current version both contain language regarding "conduct designed to substantially increase the fear and anxiety a victim suffers during the offense," the statute then, unlike the current version, did not contain the requirement that the conduct be "similarly egregious" to conduct that falls within sadism, torture, or excessive brutality. And that, we conclude, is a significant difference. Thus, *Hornsby* cannot control the outcome of this appeal.

Here, although defendant threatened[5] the victim when demanding the money and other belongings, he did no more. Valentin immediately turned over what was demanded, and defendant took no other action that could rise to the level of egregious conduct similar to sadism, torture, or excessive brutality designed to substantially increase the fear and anxiety of Valentin. Although use of the tire iron was not necessary for the conviction of unarmed robbery, its use without more did not rise to a level that would require an assessment of 50 points for OV 7.

C. OV 9

Turning to his next argument, we reject defendant's contention that the trial court erred by assessing 10 points under OV 9 because there was only one victim in the robbery.

---

[4] Although the term "terrorism" was removed from the statute, the corresponding definition was not. See House Legislative Analysis, HB 4463 (April 28, 2015).

[5] According to the victim, defendant threatened to pull out a knife and stab the victim if he did not comply with defendant's demands. A threat is a necessary element of the crime. *Johnson*, 206 Mich App at 125-126.

OV 9 relates to the number of victims. *People v Mann*, 287 Mich App 283, 285; 786 NW2d 876 (2010). Ten points are assessed under OV 9 when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). A victim is one who is placed in danger of injury or death when the offense was committed. *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008). An assessment under OV 9 must be based solely on the defendant's conduct during the sentencing offense. *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009).

After defendant left Rojas's apartment, he took the tire iron from Tique-Diaz, smashed the windows of the truck that Valentin was hiding in, and then robbed Valentin. Evidence showed that during the robbery Rojas stood outside his apartment and watched the robbery. Because Rojas was outside his apartment, in close proximity to the robbery, the trial court properly counted Rojas as a victim. *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds by *People v Gratsch*, 495 Mich 876 (2013) ("[A]" close proximity to a physically threatening situation may suffice to count the person as a victim."). Therefore, the trial court did not err by assessing 10 points under OV 9.

### D. OV 12

Defendant and the prosecution agree that, at sentencing, the parties stipulated, and the trial court agreed, that zero points would be assessed under OV 12. Thus, the failure to assess zero rather than five points for OV 12, appears to be an administrative error. In conjunction with the error in scoring OV 7, this administrative error changes defendant's minimum sentencing guidelines range. Defendant's sentencing offense of unarmed robbery is a class C offense. MCL 777.16y. With a prior record variable (PRV) score of 80 points, and an original total OV score of 71 points, defendant's sentencing guidelines range, as a fourth-offense habitual offender, was 58 to 228 months. MCL 777.64. However, had the trial court properly assessed zero points for OVs 7 and 12, his total OV score would have been 16 points, resulting in a sentencing guidelines range of 36 to 142 months. MCL 777.64. Because the scoring error alters defendant's minimum sentencing guidelines range, remand for resentencing is required. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

### II. CONSENT TO SEARCH

We now turn to defendant's argument that the trial court erred in denying his motion to suppress. Defendant offers two grounds in support of his position. First, he argues that there was no valid consent for police officers to search his and Tique-Diaz's apartment because he did not give consent. Second, he argues that Tique-Diaz's consent was the product of coercion and duress. We disagree with both arguments.

This Court reviews a trial court's findings of fact made after a suppression hearing for clear error, but reviews the ultimate decision on a motion to suppress de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000), citing US Const, Am IV; Const 1963, art 1, § 11. "The touchstone of these protections is reasonableness; not all searches are constitutionally prohibited, only unreasonable searches." *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005). Ordinarily, searches conducted without a warrant are unreasonable. *Id*. However, there are a number of exceptions to the warrant requirement, including voluntary consent. *Id*.

Consent permits a search so long as it "is unequivocal, specific, and freely and intelligently given." *People v Beydoun*, 283 Mich App 314, 337; 770 NW2d 54 (2009) (quotation marks and citation omitted). Whether consent is valid depends on the totality of the circumstances. *People v Galloway*, 259 Mich App 634, 648; 675 NW2d 883 (2003). Importantly, it is not necessary that a person be told of the right to withhold consent for the person's consent to be voluntary. *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999). "The trial court's decision regarding the validity of the consent to search is reviewed by this Court under a standard of clear error." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001) (quotation marks and citation omitted).

Although defendant argues that he did not consent to the search because he refused to give consent to Deputy Burney, Deputy Burney testified that he asked defendant for his consent, and defendant provided it. The trial court determined, based on the testimony at the evidentiary hearing (including, obviously, defendant's testimony that conflicted with Deputy Burney's) and a DVD recording from Deputy Burney's police car, that defendant consented to the search. Defendant's argument is solely based on acceptance of his version of the facts, which the trial court did not accept. And because we in large part must defer to the trial court's credibility determinations, *People v Roberts*, 292 Mich App 492, 503-504; 808 NW2d 290 (2011), we are compelled to conclude that the trial court did not err when it determined that defendant's consent was valid.

Defendant next argues that Tique-Diaz's consent was the product of coercion and duress.[6] If defendant is correct, Tique-Diaz's consent would be invalid. *People v Bolduc (On Remand)*, 263 Mich App 430, 440; 688 NW2d 316 (2004). Defendant argues that Deputy Garcia's threat to Tique-Diaz to call Child Protective Services ("CPS") to take away her children coerced her into consenting to the search. But again, the trial court concluded otherwise.

---

[6] It is not clear that defendant has standing to challenge Tique-Diaz's consent to search. Nevertheless, no one has raised this issue so we assume for purposes of decision that he has standing to do so. See, e.g., *People v Gunn*, 48 Mich App 772, 777 n 3; 211 NW2d 84 (1973) ("[W]e will assume for the purpose of this appeal that the defendants have standing to challenge the legality of the witnesses' arrest and the subsequent search and seizure."); *People v Brown*, 132 Mich App 128, 129; 347 NW2d 8 (1984) ("For purposes of this appeal, we assume, without deciding, that defendant has standing to contest the validity of a search of a third party's premises.").

Indeed, the trial court credited Deputy Garcia's testimony that his statement to Tique-Diaz regarding calling CPS was not a threat, and that he only told Tique-Diaz that she needed to call a family member to come to the apartment to look after her children, otherwise he would have to call CPS. This testimony, accepted as true by the trial court, establishes that Deputy Garcia's statement to Tique-Diaz was not a coercive tactic to obtain Tique-Diaz's consent to the search. It was, instead, a statement of what would inevitably happen if Tique-Diaz did not call a family member to watch her children. Therefore, the trial court did not err in determining that defendant and Tique-Diaz voluntarily consented to a search of their apartment.

Defendant's convictions are affirmed, his sentence for unarmed robbery is vacated, and this matter is remanded for resentencing. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel