*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CRYSTAL YVETTE MARTIN-LEVIER,

Defendant-Appellant.

UNPUBLISHED
June 18, 2019

No. 342095
Oakland Circuit Court
LC No. 2017-262380-FC

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right her conviction, following a jury trial, of second-degree murder, MCL 750.317.[1] The trial court sentenced her to a prison term of 30 to 60 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's killing of her boyfriend, Trenton Johnson, in December 2016. Defendant claimed that Johnson was physically abusive and that she killed him in self-defense.

Defendant and Johnson lived together beginning in 2014. Defendant testified at trial that Johnson was physically abusive, had scratched her skin with his fingers and knives, and had hit her with various objects, including bottles, ashtrays, shoes, and the television remote control. She also described Johnson's verbal abuse and controlling nature, stating that Johnson had limited and monitored her access to friends and family, frequently accused her of infidelity, and threatened to harm her with knives. Johnson owned numerous knives. In addition to being Johnson's romantic partner, defendant also acted as a "caretaker" for Johnson, who had "balance issues" as a result of previous gunshot injuries as well as "severe sleep apnea" and "restless leg

---

[1] Defendant was acquitted of first-degree murder, MCL 750.316.

syndrome." Although Johnson was employed when they initially became involved, he later became unemployed and defendant supported him financially. Defendant's son, Andre Sheppard, confirmed that Johnson required defendant to use a "speaker phone" when talking to him on the phone. Sheppard testified that in 2014 he had observed Johnson holding a shotgun after defendant and Johnson had an altercation.

In August 2016, defendant walked into an Oakland County Sheriff's Office substation barefoot and bleeding from the head; defendant stated at trial that Johnson had hit her with a chair after accusing her of being unfaithful. Deputy Paul McDougal testified that he spoke with defendant and observed that defendant had a laceration on her right temple. Defendant refused to tell Deputy McDougal what had happened. Deputy McDougal accompanied defendant when she returned to her apartment to retrieve some belongings. He spoke with Johnson, who claimed they had had an argument that became mutually violent, with defendant and Johnson throwing various objects at each other. Deputy McDougal observed a "knot" on the back of Johnson's head, which Johnson claimed was from a beer mug thrown by defendant. Defendant stayed away from Johnson for five days, but eventually moved back in with him after he promised that he would get psychiatric help.

On December 15, 2016, defendant was speaking with one of her children on her cellular phone when Johnson became upset that defendant was not using the speaker-phone feature. Defendant testified that Johnson had been drinking all day. The parties began to argue, and Johnson hit defendant with an ashtray and choked her with his forearm. Eventually the argument ended, and Johnson asked defendant to have sex, which defendant refused. Defendant and Johnson went to sleep in separate recliner chairs in the living room. Defendant testified that the she was awakened during the night by Johnson pressing a pillow over her face. Johnson threatened her with a knife until defendant performed oral sex on him, and later sodomized defendant with a beer bottle. Defendant stated that she and Johnson went back to sleep after the sexual assault, but that upon awakening Johnson began chasing her around the house. Johnson punched and kicked defendant and hit her with his cane and a beer bottle; defendant described Johnson as "very out of it" and "very angry." Defendant testified that she grabbed a nearby knife while she was being beaten and that she stabbed Johnson in the hip. Defendant stated that she blacked out after stabbing Johnson, and did not remember anything else until she was arrested later that day. Defendant remembered fearing that Johnson would kill her.

Around 10:00 a.m. on December 16, 2016, Deputy James Lambert of the Oakland County Sheriff's Office was dispatched to defendant and Johnson's residence for a "welfare check." He had been informed that someone had called 9-1-1 from that location, but that "all [the 911 operator] could hear on the other end of the line was someone coughing and gagging." Defendant answered the door for Deputy Lambert and walked away, saying "you all better save him." Deputy Lambert saw Johnson sitting on the couch shirtless with a blanket wrapped around his waist. Johnson did not respond to Deputy Lambert's questions. When Deputy Lambert got closer to Johnson he saw that Johnson had a serious stomach wound. Deputy Lambert called an ambulance for Johnson. Deputy Jason Winborn, Deputy Lambert's section partner, arrived in his own car during this time period and also saw Johnson and his wound. Defendant had a "blank stare" during these events and often did not respond to the deputies' questions. The deputies searched the house and discovered a large kitchen knife stained with what appeared to be blood

in the kitchen sink. The house otherwise appeared well kept, apart from bloodstains on the couch and on a blanket and pillow where Johnson had been sitting.

Johnson was transported to the hospital and pronounced dead. He had a total of five knife wounds on his abdomen, near his ribs, and on his right hip. His death was determined to be a homicide caused by "multiple shock force injuries or trauma." A toxicology test determined that Johnson's blood alcohol level was .33.

Deputy Lambert ultimately arrested defendant and transported her to the police station. She smelled strongly of alcohol, and refused a preliminary breath test. Her sweatshirt had blood on it. Defendant removed her clothing and refused to put new clothing on. She was transported to the hospital, where her blood was drawn. Her blood alcohol level was determined to be .258. Defendant initially refused to answer questions from police or speak to a case worker at the jail, but agreed to answer questions after she was permitted to make a phone call. Oakland County Sheriff's Deputy Brian Goleniak testified at trial that he heard defendant's part of the call, and heard her say "I stabbed him, he was constantly beating me, I couldn't take it anymore." Deputy Goleniak observed that defendant seemed very "calm and matter of fact" during the call.

Before trial, the prosecution moved the trial court to allow it to introduce the testimony of defendant's ex-husband, Kenneth Merritt, concerning acts of domestic violence that defendant had committed during their marriage 15 years earlier. The trial court ruled that the prosecution could introduce Merritt's testimony as rebuttal evidence if defendant testified that she was a peaceful person who had never physically assaulted anyone, or if defendant presented the defense of self-defense.

At trial, defendant presented the expert testimony of Holly Rosen, a social worker who was qualified as an expert in domestic violence. Rosen testified that it was often difficult for victims of domestic violence to safely leave their abusers, and that a victim of domestic violence might seek an "equalizer," such as a weapon, to prevent further abuse. Rosen opined that self-defense in the domestic abuse context could mean a victim defending herself from "an immediate attack" or a victim defending herself from a future attack because she recognizes the abuser's "cues" and anticipates a future attack. Rosen stated that a victim who uses force on her abuser may not immediately explain that she was motivated by a need to defend herself.

Defendant was convicted and sentenced as described. This appeal followed. After filing her claim of appeal, defendant filed a motion with this Court to remand for resentencing based on her attorney's alleged ineffective assistance of counsel at sentencing, which motion this Court denied.[2]

---

[2] *People v Martin-Levier*, unpublished order of the Court of Appeals, entered September 12, 2018 (Docket No. 342095).

## II. MERRITT'S TESTIMONY

Merritt testified at trial in rebuttal that between 1993 and 2000 defendant had occasionally slapped Merritt in the face when Merritt refused to give her money for gambling. In 2000, while Merritt drove her home from a casino, defendant grabbed the steering wheel; Merritt believed that she was trying to "flip" the vehicle. Merritt left defendant after this incident.

Defendant argues that the trial court abused its discretion when it admitted this testimony as rebuttal evidence, because the testimony's probative value was substantially outweighed by the danger of unfair prejudice and defendant did not put her character at issue during trial. We disagree.

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015).

> A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence. [This Court] review[s] such questions of law de novo. If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict. [*Id.* (quotation marks and citations omitted).]

Before defendant's trial, the prosecution filed a notice of intent to introduce other-acts evidence, stating that it wished to introduce Merritt's testimony about incidents of domestic violence that defendant allegedly had committed while she and Merritt were married. The prosecution argued that there were three ways Merritt's testimony could be admitted at trial: (1) under MCL 768.27b as part of the prosecution's case in chief; (2) under MRE 404(b) because defendant was asserting a defense of self-defense; and (3) under MRE 405 to rebut defendant's expected testimony that she has a "peaceful character."

After considering the issue, the trial court ruled that Merritt's testimony was not admissible as part of the prosecution's case in chief, but that Merritt could potentially testify as a rebuttal witness. The trial court stated that if defendant testified that she was a peaceful person who had never physically assaulted anyone, then Merritt's testimony could be introduced under MCL 768.27b because the admission of Merritt's testimony would then be in "the interest of justice." Similarly, the court reasoned that if defendant testified that she killed Johnson in self-defense, then Merritt's testimony could be admitted as other-acts evidence under MRE 404(b) to rebut her claim of self-defense. The court did not mention MRE 405. Therefore, it appears that Merritt's testimony was admitted under either MCR 768.27b or MRE 404(b). We conclude that Merritt's testimony was properly admitted under MCR 768.27b.

The admission of evidence of other acts of domestic violence or sexual assault is governed by MCL 768.27b(1), which provides:

> Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence

of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

The admission of other-acts evidence is not limited to cases involving the actual charge of domestic assault, MCL 750.81(2); an offense involving domestic violence includes "[c]ausing or attempting to cause physical or mental harm to a family or household member." MCL 768.27b(6)(a); see also *People v Railer*, 288 Mich App 213, 220; 792 NW2d 776 (2010). An act done in self-defense, however, does not constitute domestic violence. MCL 768.27b(6)(a).

In cases in which the defendant is accused of an offense involving domestic violence, "[t]he language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011). MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." If the other acts occurred more than 10 years before the charged offense, then evidence of these acts is inadmissible unless an exception applies. MCL 768.27b(4).

MCL 768.27b is applicable in this case because defendant was charged with killing Johnson, who was a member of defendant's household, and Merritt testified about alleged physical abuse that defendant had committed against him while the couple was married. It is not in dispute that the incidents of domestic violence about which Merritt testified occurred more than 10 years before defendant killed Johnson. Therefore, the admission of this evidence was only proper if one of the exceptions found in MCL 768.27b(4) applied. The trial court determined that the exception found in MCL 768.27b(4)(d) applied in that it would be "in the interest of justice" to allow Merritt to testify if defendant first testified that she was a peaceful, nonviolent person who had never assaulted anyone. To be admissible under the interest of justice exception, the evidence must be "uniquely probative," meaning that "the jury is likely to be misled without admission of the evidence." *People v Rosa*, 322 Mich App 726, 734; 913 NW2d 392 (2018).

Defendant testified on direct examination that she "never hurt anybody in [23] years of [military] service." During cross-examination, when the prosecution brought up Merritt, defendant denied ever assaulting him, and instead testified that Merritt had assaulted her. Based on defendant's testimony, the court did not abuse its discretion when it allowed Merritt to testify in rebuttal to defendant's testimony. Defendant went out of her way to deny that she had ever hurt anyone in 23 years, invoking her military service to either enhance her credibility or demonstrate that she was so exceptionally committed to nonviolence that she never hurt anyone even while serving in the Armed Forces. Moreover, she specifically denied having assaulted Merritt and testified that she had also been the victim of abuse at his hands. It therefore served the interest of justice to give the jury a fuller picture of defendant's character and propensity to commit domestic violence, and the jury could have been misled without Merritt's testimony.

Therefore, Merritt's testimony was properly admitted under MCL 768.27b so long as the evidence was not otherwise properly excluded under MRE 403.

In determining whether MRE 403 precludes the admission of otherwise admissible evidence, the court must first decide whether the introduction of the other-acts evidence was unfairly prejudicial. *Cameron*, 291 Mich App at 611. Second, the court must "apply the balancing test and 'weigh the probativeness or relevance of the evidence' against the unfair prejudice." *Id*. (citation omitted).

"The unfair prejudice language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id*. (quotation marks and citations omitted). "Moreover, admission of [e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citation omitted). Nonetheless, the prosecution is not required to use the least prejudicial evidence available to it. *Id*. Here, Merritt described acts of domestic violence by defendant that included slapping his face, as well as one incident in which she grabbed the steering wheel of his vehicle, possibly in an attempt to injure them both. Merritt's testimony is relatively tame compared to the significantly more gruesome testimony regarding Johnson's killing and was unlikely to inflame the jury. Moreover, the trial court minimized the prejudicial effect of the testimony by instructing the jury that the issue in this case was whether defendant had committed the charged offense, and that the jury should not consider Merritt's testimony as "evidence that [ ] defendant committed the crime charged."

Merritt's testimony was relevant to rebut defendant's claim that she was a peaceful person who had never hurt anyone in at least 23 years, and any prejudicial effect did not substantially outweigh the evidence's probative value. *Rosa*, 322 Mich App at 734; MRE 403. Therefore, the trial court did not abuse its discretion when it permitted Merritt to testify under MCL 768.27b. Because Merritt's testimony was properly admitted under MCL 768.27b, we decline to address whether it was also admissible under MRE 404(b).

### III. RIGHT TO PRESENT A DEFENSE

Defendant also argues that she was effectively denied her constitutional right to prevent the defense of self-defense by the trial court's admission of Merritt's rebuttal testimony. We disagree.

An issue is preserved for appellate review when it is raised before and decided by the trial court. *People v Fyda*, 288 Mich App 446, 460 n 35; 793 NW2d 712 (2010). Defendant did not argue at trial that Merritt's testimony effectively denied defendant the right to present a defense. This issue is therefore unpreserved. We review "an unpreserved claim of constitutional error . . . for plain error affecting substantial rights." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

"There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People*

*v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citations omitted). "Few rights are more fundamental than that of an accused to present evidence in his . . . own defense." *Id*. (quotation marks and citation omitted). However, "this right is not unlimited and is subject to reasonable restrictions." *Id*. "The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. (quotation marks and citation omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 474 (quotation marks and citation omitted).

Defendant argues that the trial court erred when it ruled Merritt's rebuttal testimony was admissible, but does not argue that MRE 404(b), MRE 405, or MCL 768.27b is "arbitrary or disproportionate to the purposes it was designed to serve, either in general or as applied to the facts of this case." *King*, 297 Mich App at 474. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. (quotation marks and citation omitted). In any event, the trial court permitted defendant to argue the defense of self-defense before the jury and to present extensive evidence in the form of her own testimony and the testimony of other lay witnesses and an expert witness. The trial court instructed the jury on self-defense. The trial court's admission of evidence that potentially harmed defendant's defense did not deny her the right to present it. There was no plain error. *Pipes*, 475 Mich at 274.

## IV. VOLUNTARY MANSLAUGHTER INSTRUCTION

Defendant argues that the trial court erred by instructing the jury on voluntary manslaughter. We disagree. The instruction on voluntary manslaughter was supported by a rational view of the evidence. *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (citation omitted). Defendant's testimony that Johnson had abused her the previous night and was abusing her when she stabbed him could have supported a finding of provocation as well as a finding of self-defense. See *id*. ("To prove that a defendant committed voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions."). More importantly, even if the court erred when it instructed the jury on voluntary manslaughter, such an error was harmless because defendant was not convicted of voluntary manslaughter. Our Supreme Court has said "that a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury." *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998).

## V. SENTENCING

Defendant also argues that her sentence was disparate and disproportionate, and that her trial counsel provided ineffective assistance of counsel when she failed to argue or file a sentencing memorandum supporting defendant's position that she was wrongfully convicted of six prior offenses that were included in her presentence investigation report. We disagree.

## A. DISPROPORTIONATE SENTENCE

Defendant argues that her sentence was disproportionate to the particular circumstances surrounding the offense and the offender, and was therefore unreasonable. Generally, we review whether a sentence is reasonable using the abuse of discretion standard of review. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). However, "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), citing MCL 769.34(10). Additionally, even though the sentencing guidelines are advisory, " '[s]entencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.' " *Steanhouse*, 500 Mich at 470, quoting *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). This Court reviews de novo issues involving the interpretation and application of the sentencing guidelines. *Rosa*, 322 Mich App at 742 n 9.

At sentencing, defendant's minimum sentencing guidelines range was calculated at 315 to 525 months' imprisonment. The trial court sentenced defendant to a minimum term of 30 years' imprisonment, which is within (and, indeed, on the lower end of) that range. Accordingly, this Court must affirm defendant's sentence unless there was a scoring error or the trial court relied on inaccurate information. *Schrauben*, 314 Mich App at 196, citing MCL 769.34(10).

Defendant does not argue that a scoring error occurred,[3] but she does argue that the trial court relied on inaccurate information when it stated that Johnson "wasn't exactly. . .spry" and that defendant could have "left him in her dust" if she had run away, and declined defendant's request for a sentence below the guidelines range because defendant "could have retreated from [Johnson] to safety." We disagree. Defendant asserts that Rosen testified that defendant could not have left the scene. However, Rosen provided no such testimony. While Rosen did testify in general about why a victim of domestic violence might not leave her abuser, Rosen did not testify that defendant was unable to leave the house during Johnson's alleged assault. Moreover, the jury rejected defendant's claim of self-defense; the trial court's statements acknowledging in effect that defendant was not forced to kill Johnson comports with the jury verdict. Therefore, defendant's argument that the court relied on inaccurate information in sentencing her lacks merit.[4]

---

[3] However, as discussed later in this opinion, defendant does argue that her counsel should have challenged the six federal convictions that contributed to her prior record variable (PRV) score.

[4] Defendant also argues that MCL 769.34(10) does not survive our Supreme Court's decision in *Lockridge*. Defendant acknowledges that this Court held in *Schrauben* that MCL 769.34 did survive *Lockridge*, *Schrauben*, 314 Mich App at 182, and that we must follow *Schrauben* unless it is overruled by our Supreme Court, MCR 7.215(C)(2), but seeks to preserve the issue for future appellate review. That issue is so preserved.

-8-

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that her counsel was ineffective at sentencing for failing to explain, either at sentencing or in a sentencing memorandum, the full circumstances behind her federal convictions. We disagree. A claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014) (quotation marks and citation omitted). We review the trial court's factual findings for clear error and review questions of law de novo. *Id*. at 67-68. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). Because the trial court did not conduct a "hearing to determine whether [ ] defendant's counsel was ineffective, [this Court's] review is limited to mistakes apparent from the record." *Lane*, 308 Mich App at 68.

The Michigan Constitution and the Sixth Amendment to the United States Constitution both guarantee the "right to the effective assistance of counsel." *Shaw*, 315 Mich App 672 (citations omitted). To succeed on an ineffective assistance of counsel claim, a defendant must demonstrate that "(1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *Id*. This Court presumes that counsel rendered effective assistance, and the defendant bears the burden of overcoming that presumption. *Lane*, 308 Mich App at 68. A defendant is only prejudiced if it is reasonably probable that the outcome of the trial would have been different without counsel's errors. *Id*.

Defendant argues that her trial counsel provided ineffective assistance of counsel when she failed to file a sentencing memorandum or otherwise explain that defendant was wrongfully convicted of six federal crimes that were included in her PRV score. We disagree. Defendant's claim that she was wrongfully convicted of six federal offenses is solely supported by her self-serving statements on appeal.[5] It is far from reasonably probable that the trial court would have seriously considered defendant's self-serving statements even if trial counsel had raised this argument in a sentencing memorandum or at sentencing. Further, although defendant argues that her counsel should have emphasized that defendant only received probation for these convictions, the trial court was aware of the information included in the presentence investigation report, including information regarding the lenient sentence that defendant received for her federal convictions. And the only statement the trial court made about defendant's record at sentencing was that defendant "had no history of assault whatsoever." It is therefore difficult to see how reminding the trial court that defendant had only received probation for prior federal offenses would have altered the trial court's sentencing determination. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of

---

[5] In addition to statements in her brief, defendant provided this Court with an affidavit attesting that she was wrongfully convicted of federal offenses while living in Kuwait. This affidavit is not part of the lower court record and we have not considered it. *People v Eccles*, 260 Mich App 379, 384 n 4; 677 NW2d 76 (2004).

counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).  Defendant has not demonstrated that her counsel was ineffective at sentencing, or that her counsel's performance affected the outcome of the proceedings.

Affirmed.


/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle