# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROBERT LEE ROSA,

      Defendant-Appellant.

FOR PUBLICATION
January 23, 2018
9:15 a.m.

No. 336445
Barry Circuit Court
LC No. 16-000438-FC

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant was convicted of assault with intent to commit murder, MCL 750.83, assault by strangulation, MCL 750.84(1)(b), and domestic violence, MCL 750.81(2). The convictions arose out of an assault against his ex-wife on March 6, 2016.[1] He was sentenced as a second-offense habitual offender, MCL 769.10. The sentencing guidelines provided a recommended minimum term of between 135 months and 281 months, but the trial court departed from the guidelines and imposed a sentence of 300 to 600 months' imprisonment on the assault with intent to commit murder conviction. Defendant was also sentenced to 120 to 180 months' imprisonment on the assault by strangulation conviction, and 93 days' imprisonment on the domestic violence conviction.

According to the testimony of the victim and other evidence, defendant entered the victim's bedroom while she was asleep with their youngest child asleep beside her. Defendant placed a pillow over the victim's face. He then put a belt around the victim's neck and tightened it; however, the victim was able to get her hand between the belt and her neck so she could still breathe. Defendant removed the belt and put it around the victim's neck a second time and tightened it, cutting off the victim's ability to breathe. There was physical evidence of the strangling including bruising on her neck, and broken blood vessels around her eyes.

Defendant raises five claims of error in this appeal, three that challenge his convictions and two that challenge his sentence. For the reasons discussed below, we affirm.

---

[1] At the time of the assault in this case, defendant and the victim were divorced but still living together.

-1-

# I. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred by admitting evidence of prior acts of domestic violence against his first wife.[2]  The trial court ruled that the evidence was admissible under MCL 768.27b and MRE 404(b).[3]  We agree with defendant that this evidence was improperly admitted but after a review of the entire record, we are confident that this error was harmless because it is highly unlikely that it affected the outcome of the trial and it does not undermine the reliability of that outcome.  *People v Young*, 472 Mich 130, 141-142; 693 NW2d 801 (2005); *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).  We will first review the issue in relation to the statute and then in relation to the rule.

## A.  MCL 768.27b

MCL 768.27b provides that in domestic violence cases, evidence of other acts of domestic violence are admissible, even to show propensity, so long as their admission does not violate MRE 403 and they took place no more than 10 years before the charged offense.  The statute reads in pertinent part:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

> *  *  *

> (4) Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that admitting this evidence is in the interest of justice.

The prior acts testified to by defendant's first wife occurred, at a minimum, 16 years before the events for which he is charged.  Per the language of the statute, those acts that occurred ten years before the charged offense are inadmissible unless their admission "is in the interest of justice."  The statute does not define "interest of justice."

---

[2] Before the trial court, defendant also argued that the victim should not be allowed to testify as to defendant's prior bad acts against her; however, he does not raise this on appeal.

[3] "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion."  *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).  A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes.  *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted).  However, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo."  *McDaniel*, 469 Mich at 412.

The prosecution argues that the evidence of prior acts occurring outside the 10-year period was admissible under the "interest of justice" exception because the evidence was probative of defendant's pattern of behavior and it did not violate MRE 403. The difficulty with this standard is that if we read the "interest of justice" exception to apply merely because the evidence is probative of defendant's propensities and it survives MRE 403 review, the 10 year limitation has no meaning. All evidence admitted under MCL 768.27b, including evidence of acts falling within the ten-year window must be probative and must not violate MRE 403. Thus, to define "interest of justice" by such a standard means that evidence of beyond-ten-year-old prior acts is admissible simply by showing that it would be admissible had it occurred within the ten-year window. This renders the ten-year limit essentially nugatory, and it is well-settled that we must avoidany "construction that would render any part of the statute surplusage or nugatory." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011) (quotation marks omitted).

For this reason, we conclude that the trial court applied the wrong standard in determining whether the testimony of defendant's first wife fell within the "interest of justice" exception. To avoid rendering the 10-year limit nugatory, the exception should be narrowly construed. Accordingly, we conclude that evidence of prior acts older than 10 years are admissible under MCL 768.27b only if that evidence is uniquely probative or that without its admission, the jury is likely to be misled.

In this case, the testimony of defendant's first wife concerning events that occurred at least sixteen years before the charged crimes was not uniquely probative. The victim's testimony laid out a detailed and compelling picture of defendant as an abusive and violent husband. She described repeated verbal abuse, multiple beatings, and a rape. The older son described threatening and violent behavior as well. The prior bad acts described by defendant's first wife were neither uniquely probative nor needed to assure that the jury was not misled; instead, they were consistent with and cumulative to the victim's testimony regarding defendant's character and propensity.

## B. MRE 404

We next consider whether the testimony of defendant's first wife, though not admissible under MCL 768.27b, was nevertheless admissible under MRE 404. MRE 404 differs from MCL 768.27b in several ways that are relevant here. First, there is no temporal limitation. "The remoteness of the other act affects the weight of the evidence rather than its admissibility," *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011), but unlike the statute, it contains no bright line cut-off based on when the acts took place. Second, while the statute permits evidence to be admitted to show defendant's propensity or character, MRE 404 does not. The text of the rule begins, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." However, MRE 404(b) sets forth a list of several grounds, other than propensity, to which such evidence may serve as proof "when the same is material."

We conclude that the testimony of defendant's prior wife was not admissible under MRE 404(b) because the purpose of the evidence was to show that in this case, defendant acted in conformity with the character shown in the prior acts, i.e. that defendant was threatening,

-3-

abusive, and violent. The testimony of defendant's first wife demonstrated that defendant is a dangerous man and an incorrigible spouse abuser, but it did not offer probative evidence on a material issue. Putting aside the fact that identity was not at issue, there was no particular pattern or scheme described by his first wife that would serve to identify defendant except to show that abusing and attacking his wives is in the nature of defendant's character. Nor did the evidence have significant, if any, probative value as to intent. Testimony about defendant's abusive treatment of his first wife many years ago tells us little, if anything, about whether he had an intent to kill when attempting to strangle the victim. By contrast, there is substantial evidence of defendant's intent in the victim's testimony describing the actual assault at issue, i.e. that he attempted to smother her with a pillow, and twice placed a belt around her neck and tightened it so that she could not breathe. Further, the photographs of the victim's bruises and discoloration around her eyes from ocular petechiae[4] were very relevant to intent because they showed that the belt was tightened around the victim's neck for a significant period of time. Finally, defendant's 16-year-old son testified that the day after the assault against his mother, defendant was in a state of anger and repeatedly attacked him. Compared to this sort of evidence, 16-year-old assaults against a different person are barely probative of intent, if at all. And to the degree it is at all probative, under the facts of this case, it would not survive review under MRE 403 due to its "danger of unfair prejudice."

## C. Harmless Error

As just noted, the testimony of defendant's first wife did carry significant potential for unfair prejudice in that the jury could conclude that even if defendant was not guilty of the instant charge, he was a bad and dangerous man who should be incarcerated. As the Supreme Court stated in *People v Denson*, 500 Mich 385; 902 NW2d 306 (2017):

> [O]ther-acts evidence carries with it a high risk of confusion and misuse. When a defendant's subjective character [is used] as proof of conduct on a particular occasion, there is a substantial danger that the jury will overestimate the probative value of the evidence. The risk is severe that the jury will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again. [*Id.* at 410 (quotation marks and citations omitted).[5]]

---

[4] These are red dots that appear around the eyes when capillaries burst because the blood flow to the head has been cut off.

[5] See also, *People v. Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988), where the Supreme Court described three ways in which the prior act evidence may prove prejudicial:

> First, that jurors may determine that although defendant's guilt in the case before them is in doubt, he is a bad man and should therefore be punished. Second, the character evidence may lead the jury to lower the burden of proof against the defendant, since, even if the guilty verdict is incorrect, no "innocent" man will be forced to endure punishment. Third, the jury may determine that on the basis of

-4-

Given these dangers, the Supreme Court in *Denson* has instructed that harmless error analysis should be applied with care and that "the mere presence of some corroborating evidence [of guilt] does not automatically render an error harmless." *Id*. at 413. Rather, the Court explained that we are "to assess the effect of the error in light of the weight and strength of the untainted evidence." *Id*. (quotation marks and citation omitted). Having done so in this case, we conclude that the evidence of guilt in this case, based on properly admitted evidence, was so overwhelming that exclusion of the infirm evidence could not have resulted in a different outcome. The testimony of the victim was compelling and wholly unshaken by cross-examination. Her injuries were documented, visible, and unquestionably caused by strangulation. They were inflicted when defendant and the victim were alone except for the presence of a sleeping child, and there is evidence that it occurred at a time that defendant was very angry. Moreover, the victim's testimony about defendant's prior bad acts over the course of 10 years, properly admitted under MCL 768.27b, strongly supported the notion—proper under MCL 768.27b—that defendant had a strong propensity towards violence and specifically towards violence against the victim. Thus exclusion of the testimony of his first wife would not have spared defendant from the devastating propensity evidence that was properly admitted. Finally, defendant's claim that his wife had inflicted these injuries on herself was wholly incredible and would not have been less incredible had the testimony of his first wife been excluded.

## II. JURY INSTRUCTION ON MITIGATING CIRCUMSTANCES

Defendant contends that the trial court's refusal to instruct the jury on mitigating circumstances denied his right to a fair trial and the right to present a defense. We disagree.[6]

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The jury instruction must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*,

---

his prior actions, the defendant has a propensity to commit crimes, and therefore he probably is guilty of the crime with which he is charged.

[6] "This Court reviews de novo claims of instructional error." *People v Martin*, 271 Mich App 280, 337; 721 NW2d 815 (2006). In reviewing instructional error claims, "this Court examines the instructions as a whole, and even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *Id*. at 337-338 (quotation marks and citation omitted). Further, we review de novo whether defendant suffered a deprivation of his constitutional right to present a defense. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). Because defendant failed to argue that he was denied his constitutional right below, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

305 Mich App 230, 240; 851 NW2d 856 (2015) (quotation marks and citation omitted). Further, MCR 2.512(D)(2) requires that the jury be instructed using the Michigan Model Criminal Jury Instructions if "(a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party."

Defendant argues that the trial court should have instructed the jury on the existence of mitigating factors pursuant to M Crim JI 17.4.[7] Defendant testified that he was suicidal, if not psychotic on the night of the assault, was highly emotional, and was under the influence of non-prescribed medication. Accordingly, he argues that had the court given the requested instruction, the jury would have concluded that he was acting out of passion.

The trial court properly declined to give the mitigating-circumstances instruction for several reasons. First, defendant did not offer evidence that his "emotional excitement" was "caused by something that would cause an ordinary person to act rashly." Second, as the trial court pointed out, this assault "happened over the course of time" not in a sudden impulsive act; indeed, the testimony showed that defendant was calm when he went into the bedroom. In sum,

---

[7] M Crim JI 17.4 provides:

(1) The defendant can only be guilty of the crime of assault with intent to commit murder if [he] would have been guilty of murder had the person [he] assaulted actually died. If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.

(2) Voluntary manslaughter is different from murder in that for manslaughter, the following things must be true:

(3) First, when the defendant acted, [his] thinking must have been disturbed by emotional excitement to the point that an ordinary person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been caused by something that would cause an ordinary person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

(4) Second, the killing itself must have resulted from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and before reason took over again. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

(5) If you find that the crime would have been manslaughter had the person died, then you must find the defendant not guilty of assault with intent to murder.

there was no evidence that defendant acted in the heat of passion, which was caused by something that would create such a state in an ordinary person. See *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991). Accordingly, there was no error.

Related to his argument of instructional error, defendant claims that the lack of a mitigation instruction denied him his right to present a defense. We disagree. First, defendant testified that he never assaulted the victim. He acknowledged that he put the belt over the victim's head, but he contended that he never tightened it around her neck. He did not testify that he assaulted the victim because of the stress of the events leading up to the incident. As a result, he has failed to show how the trial court's refusal to include the mitigating-circumstances instruction denied him his constitutional right to present a defense.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied effective assistance of counsel. We disagree.[8]

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

Defendant claims that counsel was ineffective when he asked for a police officer's opinion, during cross examination, on whether defendant had an intent to murder the victim. Defendant's assertion is based on the following exchange between defense counsel and the police officer involved in the investigation of the case:

*Q*. Okay. And on the night in question, between him and [the victim], you don't know what his intent is that night, correct?

*A*. I absolutely believe that his intent was to - -

*Q*. I didn't ask what you believe. I asked what you know.

---

[8] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because defendant failed to move for a new trial or an evidentiary hearing, this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. *Sabin* (*On Second Remand*), 242 Mich App 656, 659; 620 NW2d 19 (2000).

*A.* I – based on the evidence and the total – totality of the circumstance, it would show that his intent was to murder [the victim] that night.

*Q.* All right. Thank you.

Defendant's claim that defense counsel asked for the police officer's opinion is not supported by the record. In fact, defense counsel specifically stated, "I didn't ask you what you believe. I asked what you know." In context, the question was to show that the officer did not have any knowledge of defendant's intent during the assault, which was a legitimate strategy based on the charges and the testimony. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (holding that "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ."). This Court "will not second-guess counsel on matters of trial strategy, nor [will it] assess counsel's competence with the benefit of hindsight." *Id.* Defendant has not shown that he was denied effective assistance of counsel.

## IV. SENTENCING

Defendant argues that he is entitled to resentencing where the trial court's improper scoring of offense variables (OVs) 3, 4, and 7 altered the advisory sentencing range. We disagree.[9]

First, defendant argues that the trial court improperly scored OV 7 at 50 points. MCL 777.37(1) provides in pertinent part:

(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ................................................................................. 50 points

(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ................................................................................. 0 points

"OV 7 is designed to respond to particularly heinous instances in which the criminal acted to increase that fear by a substantial or considerable amount." *People v Glenn*, 295 Mich

---

[9] "Issues involving the proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016) (quotation marks and citation omitted). The trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence."

App 529, 536; 814 NW2d 686 (2012), rev'd on other grounds by *People v Hardy*, 494 Mich 430, 434; 835 NW2d 340 (2013). For purposes of OV 7, "excessive brutality means savagery or cruelty beyond even the 'usual' brutality of a crime." *Glenn*, 295 Mich App at 533. Although all crimes against a person involve the infliction of fear and anxiety, the trial court "may consider circumstances inherently present in the crime" when scoring OV 7. *Hardy*, 494 Mich at 441-442.

"[A] defendant's conduct does not have to be similarly egregious to sadism, torture, or excessive brutality for OV 7 to be scored at 50 points, and that absent an express statutory prohibition, courts may consider circumstances inherently present in the crime when scoring OV 7." *Hardy*, 494 Mich at 443 (quotation marks omitted). Rather, "[t]he relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444.

The record supports the trial court's determination that OV 7 should be assigned 50 points. Defendant attempted to strangle or suffocate the victim three times over the course of the assault. Further, at the outset of the assault, the victim's five-year-old child was asleep next to her and when the child awoke in the middle of the assault, defendant told the child to say goodbye to the victim and that her grandmother would take good care of her. Finally, it appears that defendant intended to rape the victim while he was strangling her. Based on this evidence, the trial court properly found, by a preponderance of the evidence, that defendant's conduct was excessively brutal, that it went beyond what was required to complete an assault with the intent to kill the victim, and that it was designed to substantially increase the victim's fear and anxiety.

Defendant also contends that the trial court improperly scored OV 4 at 10 points. "Offense Variable 4 concerns psychological injury to a victim and directs a sentencing court to assess 10 points if '[s]erious psychological injury requiring professional treatment occurred to a victim[.]' " *People v McChester*, 310 Mich App 354, 356; 873 NW2d 646 (2015), quoting MCL 777.34(1)(a). MCL 777.34(2) requires a court to "[s]core 10 points if the serious psychological injury may require professional treatment" but states that, "[i]n making this determination, the fact that treatment has not been sought is not conclusive."

Here, the victim testified in detail to the terror she experienced during the lengthy assault and her fear for the fate of her children, which defendant exploited to increase her suffering. The victim testified that she did not call anyone for help that night because she was too afraid to do so. A social worker and police officer both testified that the victim appeared too frightened to speak to them when they had visited the family home. A second police officer interviewed the victim at the police station and testified that she looked directly at the ground and would not make eye contact. Further, during defendant's sentencing, the victim stated that she was in counseling and was working through the situation together with her children. Defendant's Presentence Investigative Report (PSIR) also stated that the victim reported that she and her children were in counseling.

Because the evidence showed that the victim experienced a terrifying ordeal, and actually sought professional counseling after the assault, defendant's claim of error as to OV 4 fails.

Defendant also argues that the trial court improperly scored OV 3 at 25 points. "Offense variable 3 is physical injury to a victim." MCL 777.33(1). OV 3 should be scored at 25 points when "[l]ife threatening or permanent incapacitating injury occurred to [the] victim." MCL 777.33(1)(c). OV 3 should be scored at 10 points for "[b]odily injury requiring medical treatment occurred to [the] victim." MCL 777.33(1)(d). OV 3 should be scored at 5 points for "[b]odily injury not requiring medical treatment occurred to [the] victim." MCL 777.331(1)(e).

At the sentencing hearing, defendant objected to the scoring of OV 3, arguing that there was no testimony that the injuries that the victim suffered was life threatening and that she only suffered bruising to her neck. The defense also pointed out that the victim did not seek any medical treatment that night nor in the following days, and that she was able to go to work the next day and was not incapacitated. Therefore, defendant contended that OV 3 should be scored at 5 points, rather than 25. The trial court disagreed, stating that the victim's injuries and the cause of those injuries were life threatening because strangulation can cause death.

The trial court was correct that the assault could have ended in the victim's death had defendant been able to complete his intended murderous assault. However, OV 3 is not scored because *defendant's actions* were life threatening; rather, it is scored because the *victim's injuries* are life threatening. See *Peltola*, 489 Mich at 181 (holding that the words in a statute are interpreted "in light of their ordinary meaning and their context within the statute."). The issue may be more easily considered in the context of a shooting for which a defendant is charged with assault with intent to murder. If the gunshot results in the victim nearly bleeding to death, the victim suffered a life threatening injury and OV 3 should be scored. Conversely, if the defendant was a poor shot and the victim received only a minor wound that did not place his life in danger, OV 3 should not be scored.

Applying that standard to this case, we conclude that OV 3 was properly scored. The evidence demonstrated that the strangulation continued until the victim was near death. She had petechiae around her eyes, a phenomenon that requires an extended period of strangulation, and is the result of increasing venous pressure in the head and anoxic injury to the vessels. In addition, she suffered extensive external and internal bruising to her throat demonstrating an extended period during which her airway was shut down depriving her brain of oxygen. Finally, the severity of the injury caused the victim to lose control of her bowels.

This is not to say that the act of strangulation is always enough to score OV 3. However, where the evidence shows that the strangulation was severe enough and continued long enough such that the victim lost consciousness or control over bodily functions—albeit temporarily—it demonstrates that the anoxic injury was severe enough to be life threatening.

Finally, defendant claims that his minimum sentence of 300 months (25 years) was an unreasonable and disproportionate upward departure from his recommended guidelines range. We disagree.[10]

"[A] departure sentence may be imposed when the trial court determines that 'the recommended range under the guidelines is disproportionate, in either direction." *People v Steanhouse (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2017); slip op at 3. "An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *Id.* "The first inquiry in our reasonableness review is whether there were 'circumstances that are not adequately embodied within the variables used to score the guidelines.' " *Id.* citing *People v Milbourn*, 435 Mich 630, 659-600; 461 NW2d 1 (1990).

Defendant's sentencing guidelines were scored at 135 to 281 months for his assault with intent to commit murder conviction. However, the trial court sentenced defendant, as a second-offense habitual offender, to 300 to 600 months' imprisonment, a departure of 19 months over the maximum-minimum sentence. In support of the upward departure, the trial court cited defendant's history of abusing the victim throughout the marriage, which ultimately culminated in the charged offenses that occurred while the victim's young child was in the bed next to her. Further, the trial court noted that defendant intended to rape the victim while he was strangling her and that there were three incidents of attempted strangulation during the assault. Finally, the trial court stated that given his lengthy history of domestic violence, it believed that defendant was dangerous, that his abusive conduct was likely to continue, and that he was not a good candidate for rehabilitation.

Considering the record and the trial court's statements in support of the sentence, the trial court did not abuse its discretion in departing from the guidelines when sentencing defendant. Defendant's long history of abusing the victim, the presence of a child during the assault, and the damage done to a family of four children were not fully accounted for in the guidelines. We also conclude that the extent of the departure was not disproportionate. The departure was 19 months from a guideline maximum of 281 months, a proportional increase given the non-guideline considerations and which in percentage terms was an increase of approximately 7%. As a result, the sentencing departure was "proportionate to the seriousness of the circumstances of the offense and the offender," *Milbourn*, 435 Mich at 636, and accordingly, it was reasonable under *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). *Steanhouse (On Remand)*, ___ Mich App at ___; slip op at 3.

---

[10] We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). "[T]he reasonableness of a sentence [is reviewed] for an abuse of the trial court's discretion." *Id.*

Affirmed.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola