*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2019

Plaintiff-Appellee,

v

No. 343437
Wayne Circuit Court
LC No. 17-007411-01-FC

EDGAR HENRY MERCHANT,

Defendant-Appellant.

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant assaulted his girlfriend, entered her home without her consent, threatened to kill her, and then stabbed her with a meat-carving knife. After a bench trial, the trial court convicted him of multiple offenses. Defendant appeals as of right, arguing that the evidence was insufficient to prove that he committed first-degree home invasion and that the trial court improperly scored offense variable 3 regarding physical injury to a victim. Defendant's arguments are without merit, and we affirm his convictions and sentences.

## I. BACKGROUND

Defendant and the victim began dating in October 2016, and defendant sometimes stayed overnight at the victim's home. On February 8, 2017, the victim dropped defendant off at his place of employment. In the afternoon, defendant called the victim because he wanted to come to her home, but the victim said "no." Later that day, the victim picked up defendant from his home and a verbal altercation ensued. The victim began to take defendant back to his own home, but he wanted to retrieve his personal belongings from the victim's home.

When the victim arrived at her home, she pulled her vehicle into the driveway, rather than the garage. She told defendant that she would retrieve his personal belongings and then come back to the car and take him home. Defendant then physically assaulted the victim. Defendant choked her tightly around the neck until she could not breathe and punched her in the face with a closed fist, causing the victim to lose consciousness. When the victim regained consciousness, she tried to get out of the car, but defendant caught her and hit her in the head, causing her to fall on the driveway. Defendant ordered the victim to get up, pull the car inside

the garage, and close the garage door. Defendant told the victim that he would kill her if she did not comply with his demands. The victim complied and defendant entered her home.

Once inside, defendant repeatedly threatened to kill the victim. Defendant then retrieved a meat-carving knife from the kitchen. The victim grabbed the telephone, dialed 911, and ran for the door, trying to escape. Although the victim opened the front door, defendant grabbed her and pulled her back inside the home, causing her to fall. Defendant then hit the victim again in the face and stabbed her in the groin with the knife. When the victim rolled over, defendant stabbed her again in the buttock. The victim stated that blood was "gushing" out of her groin, that she thought defendant had cut her artery, and she thought she was "bleeding out." Defendant refused the victim's plea for an ambulance and held the knife to her neck, where he cut her. At that point, police arrived and found the victim on the floor, bleeding profusely. One of the responding police officers testified that the victim's blood had pooled on the floor beneath her thighs. The victim vomited and lost consciousness.

As a result of defendant's attack, the victim was hospitalized for five days. In addition to the two stab wounds, the victim suffered a hematoma in her left eye and a cracked eye socket. After she was released from the hospital, the victim continued to follow up with her treating physician to monitor her blood count, given the amount of blood she lost as a result of defendant's attack. The victim testified that the strangulation and concussion caused a severe brain injury and post-traumatic stress disorder.

After a bench trial, the trial court convicted defendant of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; first-degree home invasion, MCL 750.110a(2); assault by strangulation, MCL 750.84(1)(b); aggravated domestic violence, MCL 750.81a(2); and interfering with a crime report, MCL 750.483a(1)(b). The trial court sentenced defendant to a term of 57 months to 10 years in prison for his AWIGBH conviction, 95 months to 20 years in prison for his conviction of first-degree home invasion, 57 months to 10 years in prison for his assault by strangulation conviction, 381 days for his conviction of aggravated domestic violence, and 381 days for his conviction of interfering with a crime report. We affirm.

II. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor presented insufficient evidence to establish that defendant lacked permission to enter the victim's home. Defendant argues that he and the victim were involved in a serious dating relationship, living together on and off, and that she did not tell him that he had no permission to enter her home on the day that he assaulted her. Defendant's argument is without merit.

When reviewing a defendant's challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011).

The elements of first-degree home invasion are: (1) the defendant breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant intends to or actually did commit a felony, larceny, or assault in the dwelling; and (3) another person is lawfully present in the dwelling or the defendant is armed with a dangerous weapon. *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). Defendant only challenges the sufficiency of the proofs regarding the first element, whether he entered the dwelling without permission, arguing that the victim did not tell him that he could not enter her home. The phrase "without permission" means "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." MCL 750.110a(1)(c).

At the bench trial, the trial court summarized the testimony by stating that the "victim clearly indicated she did not give [defendant] permission to enter" the home. The trial court also noted that defendant threatened to kill the victim if she did not comply with his demands, and that when the victim "followed his directions," defendant "came into the house." On these facts, the trial court found defendant guilty of first-degree home invasion.

Viewing the evidence in a light most favorable to the prosecutor, the trier of fact could find, beyond a reasonable doubt, that defendant entered the victim's home without her permission. Defendant never had a key or received mail at the victim's home. The testimony was clear that defendant did not have permission to enter the victim's home; the victim stated that she did not give defendant permission and did not want him to enter. The victim testified that when she arrived at her home, she told defendant that she was going to retrieve his belongings and come back to the car to take defendant back to his own home; however, defendant attacked her and entered her home. Therefore, the first element was satisfied.

Defendant argues that, because he and the victim were arguably living together at least on and off at the victim's home and because the victim had previously permitted him access to her home, the evidence presented was insufficient to prove that he had no such permission on the date in question. Defendant's argument is without merit. "[T]he fact that a person is in a dating relationship in no way entitles that person to be present in his or her partner's dwelling at will," and "[t]he fact that defendant spent some nights at the house is immaterial." *People v Dunigan*, 299 Mich App 579, 583; 831 NW2d 243 (2013). When viewed in a light most favorable to the prosecution, there was sufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered the victim's home without permission.

## B. OFFENSE VARIABLE 3

Defendant next argues that the trial court improperly assessed 25 points for offense variable (OV) 3. We conclude that the trial court properly assessed 25 points for OV 3 because the victim's excessive blood loss qualified as a life-threatening injury.

This Court reviews de novo the proper interpretation and application of the sentencing guidelines. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). On appeal, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (cleaned up).

Offense variable 3 involves "physical injury to a victim." MCL 777.33(1). A trial court must score OV 3 by determining which category applies and assigning the number of points attributable to the one that has the highest number of points. *Id*. A trial court must assess 25 points for OV 3 if "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). The trial court may only assess 10 points, however, if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d).

At sentencing, defense counsel requested that the trial court assess only 10 points, rather than 25 points, for OV 3. The trial court disagreed, explaining that there was a "great likelihood had [the victim] not called 911, she would have died because of the extent of her bleeding." In *People v Rosa*, 322 Mich App 726, 746; 913 NW2d 392 (2018), this Court stated that "[i]f the gunshot resulted in the victim's nearly bleeding to death, the victim suffered a life-threatening injury, and OV 3 should be scored accordingly." Additionally, this Court stated that the defendant's strangulation of the victim in *Rosa* warranted an assessment of 25 points because "the strangulation was severe enough and continued long enough such that the victim lost consciousness or control over bodily functions—albeit temporarily—[and] it demonstrates that the anoxic injury was severe enough to be life-threatening." *Id*. at 747.

At trial in this case, the victim testified that defendant stabbed her in the groin, buttock, and neck. Following the attack, the victim lost consciousness, suffered significant blood loss, a hematoma to one eye, and a cracked eye socket, and spent five days in the hospital. The victim stated, "I was bleeding so much I was fading out." The responding police officers testified that the victim was "bleeding heavily," that blood was "pooling under her thighs," and that she was "coming in and out of consciousness" during transport to the hospital. The victim stated that she vomited and passed out as she was being transported. After her release from the hospital, the victim received follow-up treatment because of the significant amount of blood loss. At sentencing, the victim stated that the strangulation and concussion caused a severe brain injury and that she was still being treated for the brain injury. Like in *Rosa*, the significant amount of blood loss, loss of consciousness, and loss of control over bodily functions demonstrate by a preponderance of the evidence that the victim's injuries were life threatening. *Id*. at 746-747. Therefore, the trial court did not err by finding that the victim suffered a life-threatening injury, and it did not err by assessing 25 points for OV 3.

Finally, defendant argues that the 25-point assessment was not warranted because the prosecutor did not present any medical evidence establishing that the victim's injuries were life threatening or permanently incapacitating. Medical evidence or testimony is not necessary to prove that a victim suffered life-threatening injuries. *People v McCuller*, 479 Mich 672, 697 n 19; 739 NW2d 563 (2007). In *McCuller*, the severity of the injuries alone was sufficient to conclude that they were life threatening. *Id*. at 697. Similarly, the severity of the victim's injuries in this case was sufficient to conclude that they were life threatening.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle