*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 20, 2021

v

JASON RICHARD COX,

Defendant-Appellant.

No. 350033
Saginaw Circuit Court
LC No. 19-045849-FC

Before: CAMERON, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Defendant, Jason Richard Cox, appeals his jury-trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b; carjacking, MCL 750.529a(1); kidnapping, MCL 750.349(1)(c); unlawful imprisonment, MCL 750.349b(1); assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a); and felonious assault, MCL 750.82. Cox was sentenced as a fourth-offense habitual offender, MCL 769.12, to 75 to 115 years' imprisonment for the CSC-I, carjacking, and kidnapping convictions. Cox was also sentenced to 19 to 60 years' imprisonment for unlawful imprisonment, to 25 to 60 years' imprisonment for AWIGBH, and to 5 to 15 years' imprisonment for felonious assault. We affirm.

## I. BACKGROUND

On December 13, 2018, at 6:10 a.m., the victim left her home in St. Charles, Michigan, to drive to work in a borrowed Pontiac Grand Prix. On her way to work, the victim stopped at a gas station at 6:13 a.m. to make a purchase. After doing so, the victim returned to the Grand Prix, which she had left unlocked. The victim proceeded to drive to her place of employment in Ithaca, Michigan. After several minutes passed, a man whom the victim later identified as Cox, "jumped from the back seat up behind [the victim] and put his arms around [her] neck and a knife to [her] throat." Cox told the victim, who was having trouble breathing and could feel the knife cutting her neck, to keep driving. The victim complied with Cox's demand.

As the victim approached "a little grassy parking lot," Cox instructed the victim to pull over. After the victim did so, Cox instructed her to get into the backseat with him. Once in the backseat, the victim removed her clothing, and Cox digitally penetrated the victim's vagina. After

-1-

a vehicle drove by, Cox climbed into the driver's seat and told the victim to get into the front passenger seat and to put her "head down in the floor boards" so that she would be out of view and could not see out of the windows. The victim put on her pants and complied with Cox's demand, which required reclining the seat.

Cox began driving and asked the victim several times where her phone was located. Cox eventually permitted the victim to sit up in order to locate the phone, at which point the victim opened the door and jumped from the moving vehicle. While the victim was attempting to get to her feet, Cox "floored" the vehicle and "clipped" the victim in the hip area. According to the victim, she "went flying through the air" and landed in a ditch. Cox again attempted to hit the victim with the car, but she was able to escape to a nearby home. Law enforcement was contacted. The victim was transported to the hospital to be examined and treated for her injuries, which included severe road rash and a broken arm.

At 6:48 a.m., Cox returned the Grand Prix to the gas station parking lot, and the vehicle was later located by law enforcement. Keys, clothing, and a black glove were found inside the Grand Prix. The front passenger seat was also reclined. Cox was arrested that afternoon and was charged with assault with intent to murder (AWIM), MCL 750.83; CSC-I; carjacking; kidnapping; unlawful imprisonment; and felonious assault. Although the victim was examined by medical professionals and there was a possible presence of male DNA found on her body, law enforcement never collected a sample of Cox's DNA for testing.

Trial began in May 2019. Cox's defense at trial was that he was not the individual who committed the crimes and that law enforcement rushed to judgment by charging him with the crimes a short period of time after they occurred. To support this argument, Cox highlighted the fact that the DNA that was found on the victim was not tested and therefore could not be tied to Cox. Cox also highlighted the fact that the victim offered inconsistent statements, that his fingerprints were never found in or on the Grand Prix, and that a knife was never found in his possession. Cox was acquitted of AWIM, but was convicted of AWIGBH, CSC-I, carjacking, kidnapping, unlawful imprisonment, and felonious assault. Cox was sentenced as described above, and this appeal followed.

## II. ASSISTANCE OF COUNSEL

Cox argues that he was denied his right to the effective assistance of counsel for several reasons. We disagree with the arguments.

### A. PRESERVATION, STANDARD OF REVIEW, AND RELEVANT AUTHORITY

Cox failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial, and this Court denied Cox's motion for remand to the trial court for

a *Ginther*[1] hearing.[2]  "Therefore, our review is for errors apparent on the record."  See *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8, lv pending.

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel.  *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed2d 674 (1984).  To demonstrate ineffective assistance of counsel,

> a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  [*Abcumby-Blair*, ___ Mich App at ___; slip op at 8 (quotation marks and citations omitted).]

## B.  ANALYSIS

### 1.  FAILURE TO INVESTIGATE

Cox argues that defense counsel did not properly investigate his defense because, despite being in possession of a Michigan State Police (MSP) report indicating that possible male DNA was found on the victim's body, defense counsel failed to insist that law enforcement obtain a DNA sample from Cox and compare it to the DNA samples found during the examination of the victim.

The effective assistance of counsel is presumed, and "[a] defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy[.]"  *People v Rosa*, 322 Mich App 726, 741; 913 NW2d 392 (2018) (quotation marks and citation omitted).  However, "a court cannot insulate the review of counsel's performance by calling it trial strategy.  Initially, a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citations omitted; alteration in original).  Defense "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* (quotation marks and citation omitted).

In this case, the prosecution presented overwhelming evidence of Cox's guilt.  The victim, who was in close proximity to Cox and was able to smell alcohol on his breath when the crimes

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] On July 13, 2020, Cox's motion to remand for a *Ginther* hearing was denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar."  *People v Cox*, unpublished order of the Court of Appeals, entered July 13, 2020 (Docket No. 350033).  Our Supreme Court denied leave.  *People v Cox*, ___ Mich ___; 948 NW2d 584 (2020).

were committed, identified Cox as her assailant. Additionally, the woman who assisted the victim a short period of time after the crimes occurred noted that the victim was crying and shaking and had a cut on her neck. Other individuals who interacted with the victim in the hours following the crimes made similar observations about the victim's demeanor and injuries. Photographs of the victim's injuries are consistent with testimony at trial.

The gas station clerk, who was familiar with Cox, testified that she saw Cox exit the gas station store before the victim entered the store on the morning of December 13, 2018. The clerk noted that Cox was wearing a blue sweatshirt, was sweating, and appeared to either be "drunk" or "on something." After Cox and the victim left the store, the clerk went outside to smoke a cigarette. The clerk noted that the victim had already "pulled off[.]" The clerk noticed, however, that the Chevrolet truck that Cox typically drove was parked in the parking lot. The clerk did not see Cox and noted that the truck remained outside the gas station "for a good half hour." At some point after 6:50 a.m., the clerk noticed that the truck was gone.

The clerk's testimony was substantiated by video footage, which showed Cox, who was wearing a blue sweatshirt, and the victim in the store between 6:11 and 6:14 a.m. The Grand Prix was shown leaving the gas station parking lot at 6:15 a.m. Footage also showed a person who was wearing a blue shirt with a design on the back returning the Grand Prix to the parking lot at 6:48 a.m. A passenger could not be seen in the Grand Prix. After the Grand Prix was parked, the driver exited the vehicle, drove the truck over to the Grand Prix, and parked the truck alongside the Grand Prix at 6:58 a.m. The individual could be seen "interacting" with the Grand Prix. The truck was shown leaving the gas station parking lot at 6:59 a.m.

Cox was arrested on the afternoon of December 13, 2018, while he was a passenger in the truck. When Cox's girlfriend, who had been driving the truck, asked Cox what he had "done," he responded that he had "jacked a ride because he did not have one[.]" Cox made a similar statement later that day when he made a phone call from the jail following his arrest. Specifically, Cox indicted that he had "jumped in the back seat of a girl's car" because he did not have a ride. A black glove was located in the Grand Prix, and a matching glove was found on Cox's person when he was arrested. When Cox was arrested, he was wearing a blue sweatshirt with a design on the back.

Given this overwhelming evidence of guilt, defense counsel may have suspected that Cox's DNA would likely match the DNA found during the medical examination and would therefore bolster the prosecution's case. Defense counsel likely made the reasonable strategic choice that Cox would be best served by proceeding to trial without having conducted such a test. Indeed, in the event that the DNA found on the victim matched Cox, defense counsel would be required to explain the unfavorable DNA results. Unfavorable DNA results would have severely undercut Cox's defense that he was not the perpetrator, that law enforcement had failed to adequately investigate the crimes, and that there was no physical evidence tying him to the crimes. Consequently, we conclude that Cox has failed to overcome the presumption that defense counsel made a strategic decision not to request testing. We further note that, in light of the overwhelming evidence, Cox has failed to demonstrate any prejudice related to this ineffective-assistance-of-counsel claim.

-4-

## 2. FAILURE TO CALL EXPERT WITNESS

Cox next argues that defense counsel was ineffective for failing to call an expert witness from the MSP Crime Lab to testify about "the significance of the failure to test [his] DNA against the male DNA found in the rape kit[.]" "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

We conclude that Cox has failed to overcome the presumption that defense counsel's decision not to call any witnesses from the MSP Crime Lab was trial strategy. Detective Larry Biniecki testified at trial that a report from the MSP Crime Lab indicated that there was a possible presence of male DNA found on the victim's body. During cross-examination, Detective Biniecki acknowledged that he never collected a DNA sample from Cox and that the DNA taken from the victim was never compared to a "known sample[.]" Although Detective Biniecki testified that crimes involving digital penetration typically do not yield DNA evidence, the jury was well aware that DNA evidence was located on the victim's body and that law enforcement did not analyze the potential male DNA. Importantly, defense counsel used law enforcement's failure to perform further testing as part of the basis for his argument that this case involved "a rush to judgment."

Because defense counsel was able to effectively elicit testimony from Detective Biniecki during cross-examination that the DNA was never matched to Cox and then use this failure to support Cox's defense, Cox has not demonstrated that an expert was necessary to establish the significance of law enforcement's failure to compare the DNA found on the victim with Cox's DNA. Moreover, contrary to Cox's arguments, we fail to see how an MSP expert would have been qualified to testify that law enforcement's failure to compare the DNA found on the victim with Cox's DNA established that there was "a rush to judgment." Furthermore, as already discussed, the record is replete with evidence to support that Cox committed the crimes at issue in this case. Accordingly, because Cox has not demonstrated that counsel was ineffective for failing to obtain and call an expert witness, we conclude that Cox is not entitled to the relief that he seeks.

## 3. REQUEST FOR REMAND

Finally, Cox alternatively requests that this Court remand this matter for a *Ginther* hearing. Because Cox has not set forth any facts that would require development of a record to determine if defense counsel was ineffective, we deny Cox's request. MCR 7.211(C)(1)(a).

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ James Robert Redford