*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEROME JUNIOR WATSON,

        Defendant-Appellant.

UNPUBLISHED
November 16, 2023

No. 365262
Wayne Circuit Court
LC No. 19-007471-01-FC

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

In 2020, following a bench trial, defendant was convicted of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), and assault by strangulation, MCL 750.84(1)(b).[1] The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 83 months to 15 years for each conviction. Defendant appealed those convictions in Docket No. 353605. After defendant moved for resentencing, the court vacated one of the assault convictions on double-jeopardy grounds and held that defendant was entitled to resentencing. This Court granted plaintiff's application for leave to appeal that decision in Docket No. 356971. *People v Watson*, unpublished order of the Court of Appeals, entered July 28, 2021 (Docket No. 356971). In the prior appeals, this Court affirmed defendant's convictions in Docket No. 353605, but reversed the trial court's order vacating one count of assault and remanded for reinstatement of that conviction and for resentencing in Docket No. 356971. *People v Watson*, unpublished per curiam opinion of the Court of Appeals, issued June 30, 2022 (Docket Nos. 353605 & 356791). On remand, the trial court resentenced defendant as a second-offense habitual offender to concurrent prison terms of 68 months to 15 years for each conviction. Defendants appeals these sentences as of right, and we affirm.

---

[1] The trial court acquitted defendant of additional charges of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, torture, MCL 750.85, kidnapping, MCL 750.349, and felonious assault, MCL 750.82.

-1-

# I. FACTUAL OVERVIEW

Defendant's convictions arise from his assault of CS. In the prior appeals, this Court summarized the underlying facts as follows:

> Defendant was convicted of assaulting CS in his Detroit home in the early morning hours of September 9, 2019. Before the offense, defendant and CS spoke to each other and discussed plans to develop a dating relationship. On September 8, 2019, CS took a bus to meet defendant. Defendant met CS at the bus stop and the two walked to defendant's house. Thereafter, they spent time together and had consensual sex before a later dispute led to a physical altercation. The prosecution's theory at trial was that defendant assaulted CS because defendant was upset that she would not have sex with him again. There was evidence that defendant punched, stomped, and strangled CS during the episode. Ultimately, CS left the house and was transported to a hospital where she spoke with the police and with a nurse examiner. After defendant was arrested, he gave a statement to the police in which he admitted that when CS tried to leave, he "snapped" and hit her four times with an open hand and pulled her hair.
>
> At trial, defendant asserted that he acted in self-defense. Defendant claimed that as he and CS were arguing, CS picked up a bat, hit him in the leg, and tried to swing a crutch at him, and, fearing that he would be harmed, he defended himself by hitting CS in the face, tackling her, and holding her down. The trial court rejected defendant's self-defense claim and convicted him of AWIGBH and assault by strangulation, but acquitted him of additional charges of first-degree criminal sexual conduct, MCL 750.520b, torture, MCL 750.85, kidnapping, MCL 750.349, and felonious assault, MCL 750.82. [*Watson*, unpub op at 2 (Docket Nos. 353605, 356791).]

At the resentencing hearing following defendant's prior appeals, defendant renewed his argument that Offense Variable (OV) 7 of the sentencing guidelines was erroneously scored at 50 points and the trial court again ruled, consistent with its prior decisions addressing the scoring of OV 7, that 50 points was the appropriate score for OV 7. The trial court also rejected defendant's argument that our Supreme Court's decision in *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019), required that all references to conduct related to offenses of which defendant was acquitted was required to be deleted from the presentence investigation report (PSIR).

# II. SCORING OF OFFENSE VARIABLE 7

Defendant first challenges the trial court's assessment of 50 points for OV 7 (aggravated physical abuse) of the sentencing guidelines.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 7 considers aggravated physical abuse. MCL 777.37(1) requires an assessment of 50 points if a victim "was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Each of the four listed categories offers a distinct basis for a 50-point score. *Hardy*, 494 Mich at 440-442. In this case, the trial court assessed 50 points on the basis of excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. "[T]he 'similarly egregious conduct' clause is a discrete alternative to conduct that does constitute sadism, torture, or excessive brutality." *People v Walker*, 330 Mich App 378, 389; 948 NW2d 122 (2019). We need not consider whether the evidence supports a finding that defendant engaged in similarly egregious conduct designed to substantially increase the victim's fear, because the evidence clearly supports a finding that defendant treated CS with excessive brutality. A victim is treated with excessive brutality when a defendant treats the victim with "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (citation omitted). Because of the language "during the offense" used in MCL 777.37(1)(a), the focus of OV 7 is "solely on conduct occurring during the [sentencing] offense." *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016). When scoring OV 7, sentencing courts may consider conduct that is inherent in the crime itself. *Hardy*, 494 Mich at 441-442.

We agree with the trial court that defendant's actions underlying his AWIGBH and assault-by-strangulation convictions are sufficient to justify a 50-point score on the basis that CS was treated with excessive brutality.[2] There was evidence that, during the assault, defendant "had one hand on [CS's] neck, then two, squeezing really, really hard" to the point that she believed she was unconscious, and CS believed that defendant was going to kill her. CS had difficulty breathing, a raspy voice, coughing, difficult and painful swallowing, neck pain, nausea, vomiting, dizziness, a headache, and memory loss, and was still suffering from these symptoms several days after the assaults. An examining nurse explained that although only half of strangulation cases result in visible external injuries, CS had several abrasions on her neck, and bruising on the front, sides, and even the back of her neck near the hairline. CS testified that defendant punched her in the head "several time[s]" and punched her in the mouth "several times." At one point during the episode, defendant prevented CS from escaping up the stairs, dragged her back down by her hair, and continued to physically assault her. In all, CS suffered more than 50 injuries, which were well-documented at trial with photographic evidence and witness testimony. The examining nurse explained that CS's injuries included a "one centimeter by point two centimeter area of dried blood with laceration noted to the lateral right eyelid, "two sutures to the corner and bottom lip on the right side [which] was causing the patient pain to talk and move her mouth," a "point five by point

---

[2] The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). A person is guilty of assault by strangulation if he (1) assaults another person (2) by "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(1)(b) and (2).

two red linear shaped abrasion to the left lateral eye [and a] two centimeter by point one red linear abrasion to the left eye." She also had several bruises and abrasions to her "back, arm, and legs."

In sum, a preponderance of the evidence supports the trial court's finding that defendant treated CS with excessive brutality. Thus, the trial court did not err by assigning 50 points for OV 7.

## III. ACQUITTED CONDUCT

Preliminarily, although defendant argues that his PSIR contains several errors that must be deleted or corrected, he fails to specify any particular inaccuracy or provide a citation to the PSIR to indicate which portion he is challenging. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). However, defendant does state that he preserved this claim at his resentencing and, in a footnote, he provides a citation to the record where defense counsel argued that, pursuant to *Beck*, 504 Mich at 609, because he was acquitted of CSC-I and felonious assault (with a bat), all references in the PSIR to him sexually assaulting CS or striking her with a bat—as recounted in the agent's description of the offense—should be stricken from the PSIR. Accordingly, we will consider defendant's argument on appeal in this limited context, consistent with how this issue was raised and argued in the trial court.

We review a trial court's response to a claim of inaccuracies in the PSIR for an abuse of discretion. *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). Defendant is correct that "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction." *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020), citing *Beck*, 504 Mich 605. It does not follow, however, that information about acquitted conduct cannot appear in a detailed report of the history of the case in a PSIR. As this Court explained in *Stokes*:

> [A] sentencing court may review a PSIR containing information on acquitted conduct without violating *Beck* so long as the court does not rely on the acquitted conduct when sentencing the defendant. *Beck* supports this conclusion. In *Beck*, our Supreme Court remanded for resentencing because the sentencing court unquestionably "*relied*" on acquitted conduct for its sentencing decision. (Emphasis added.) A sentencing court that reviews a PSIR that merely contains information about acquitted conduct, however, does not necessarily rely on such information when sentencing a defendant. There must be some evidence in the record that the sentencing court relied on such information to warrant finding a *Beck* violation. Had the sentencing court specifically referenced acquitted offenses as part of its sentencing rationale, a *Beck* violation would be apparent. But when PSIRs prepared by the Department of Corrections merely refer to an acquittal by a jury of offenses in a separate case, and the sentencing court does not refer to or expressly rely upon such acquitted offenses as part of its sentencing rationale, this Court cannot conclude that the sentencing court committed a *Beck* violation because such a conclusion would rest on speculation that acquitted conduct influenced the sentencing court's decision.

-4-

> In the absence of evidence presented by a defendant demonstrating that a sentencing court actually relied on acquitted conduct when sentencing the defendant, the defendant is not entitled to resentencing. [*Id.* at 311-312 (citation omitted).]

Thus, under *Stokes*, information about the victim need not be stricken from the PSIR merely because it involves acquitted conduct.

In this case, the record does not indicate that the trial court relied on acquitted conduct at defendant's initial sentencing or resentencing. Indeed, in its written opinion in response to defendant's motion to correct an invalid sentence, the trial court explicitly and thoroughly explained how it did not rely on acquitted conduct when sentencing defendant in response to defendant's claim that the court improperly considered such conduct to justify its scoring of OV 7. Because there is no indication that the trial court improperly relied on acquitted conduct referenced in the PSIR when sentencing defendant, defendant has failed to establish any error. See *Stokes*, 333 Mich App at 310.[3]

Affirmed.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett

---

[3] We note that in *People v Montez*, ___ Mich ___; 979 NW2d 334 (2022), our Supreme Court ordered oral argument on an application for leave and directed the parties to address "whether references to acquitted conduct in the defendant's presentence investigation report (PSIR) violated his right not to be sentenced on the basis of conduct of which he was acquitted, as articulated in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019)." To the extent that this order raises a question regarding the continued viability of *Stokes*, "a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2). Therefore, we remain bound by the guidelines articulated in *Stokes*.